J. L. HAWKINS, W. C. HAWKINS, and W. A. KEIF-FER, Partners Composing the Firm of HAWKINS BROTHERS' FURNITURE COMPANY, Appellants, v. THE CITY OF SPRINGFIELD, Respondent.

**Springfield Court of Appeals, June 26, 1916.**

1. **APPELLATE PRACTICE: Disputed Facts: Finding of Jury: When Final.** Action against a city for damages because of failure to remove an obstruction from a sewer. The evidence being conflicting as to one ground of the alleged negligence, the finding of the jury on that question is final.

2. **MUNICIPAL CORPORATIONS: Sewers: Duty of City to Keep in Proper Condition.** Where a city has constructed and put in operation a system of sewers it is required to keep same in a reasonably safe and effective condition and to use ordinary care and diligence to keep same free from obstructions likely to cause damage.

3. **———: Fire Department: Belongs to Governmental Functions of City.** The maintenance and use of the fire department and equipment of a city belong to its governmental functions and with reference to either the use or abuse of same by the city the doctrine of *respondeat superior* does not apply.

4. **———: ———: City's Non-Liability Regarding.** A city cannot be held liable in damages for either a negligent use or failure to use its fire engines and equipments.

5. ——: ——: **Refusal of City to Use for Other Purpose.** Action against a city for damages, the negligence complained of being the failure and refusal of such city to use its fire apparatus to pump water from an obstructed sewer which overflowed plaintiff's cellar. The city cannot be held liable for negligence in this respect.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*Wm. H. Horine* and *J. T. White* for appellants.

*Fred A. Moon* and *Frank B. Williams* for respondent.

STURGIS, J.—This is a suit for damages to plaintiffs' property, a stock of furniture, caused by water backing up and overflowing from one of the public sewers of the defendant city and flooding the basement of plaintiffs' store where such furniture was stored. It is alleged that this sewer became clogged and stopped up so that the water backed up and overflowed, flooding plaintiffs' basement and causing large damage to their furniture; that defendant, after being notified of the obstructed and choked condition of the sewer failed and neglected to take any steps to remove such obstruction or prevent the escape of water from the sewer into plaintiffs' basement; that said city had ample time to remove such obstruction and prevent the leakage and overflow but that it negligently failed and refused to do so. These facts were denied and there was evidence *pro* and *con* as to defendant's diligence and efforts to remove the obstruction. The obstruction proved to be an old quilt, but how it got into the sewer is not shown and no negligence is claimed in this respect. This lodged in the sewer and by causing trash and debris to collect there gradually formed an obstruction which proved difficult to remove and same was removed only by taking up the street pavemnt and digging down to and opening up the obstructed sewer.

Plaintiffs' allegations as to defendant's negligence are quite general, amounting to little more than that defendant negligently failed to remove or take any steps to remove this obstruction and prevent the escape of the water after being notified of the condition and danger to plaintiffs' property. Plaintiffs' evidence is more specific, and they now claim that the evidence shows three ways by which the city could and should have prevented their damage and that the failure to do so constitutes negligence, to-wit: First. It could probe the sewer and attempt to remove the obstruction in that way. Second. It could pump the water out of the sewer from a manhole above the obstruction into a manhole below it and relieve the pressure, and in this manner the flood was finally relieved after the damage was done. Third. It could dig at the place where the obstruction was and remove it after digging up the sewer. This was also done and in that manner the obstruction was finally removed, after it was too late.

It may be conceded that the petition is broad enough to raise an issue as to defendant's negligence in respect to the first and third methods mentioned. As to the second, or pumping, method, the evidence went in without objection that plaintiffs requested and urged the city to use its fire engine, pump and hose to pump the water from the sewer so as to prevent its overflow to their damage. This is the method that was finally employed, but too late as plaintiffs claim, and by pumping the water from above the obstruction and returning it to the sewer below the same, the flood was relieved till the obstruction was finally removed by digging up the sewer. This method, of course, involved the use for this purpose of the engines and apparatus belonging to the fire department and provided by the city for the prevention and extinguishment of fires. The plaintiffs offered to amend their petition during the trial so as to specifically allege negligence in not using in proper time and effectively this means of preventing their injury. The court refused to permit the amendment and instructed the jury to disregard this

ground of negligence and all evidence tending to sustain the same.

The plaintiffs did not request any submission of defendant's negligence in failing to use proper diligence in taking up the sewer and removing the obstruction in that way, and at the argument disclaimed any liability of the city in that respect.

The defendant's liability for negligent failure to remove the obstruction in the sewer by probing the sewer was submitted to the jury upon instructions which we have examined and find to fairly submit that issue. There was evidence both ways as to defendant using reasonable diligence in this respect, and the jury's finding against plaintiffs disposes of this issue.

We will grant that, except for the reason below stated, after the evidence went in without objection as to defendant's negligence, if such it be, in not more promptly and effectively using the city fire engine and hose in pumping the water from the obstructed sewer, the court should have permitted plaintiffs' proffered amendment of their petition so as to present this issue. [Carr v. Moss, 87 Mo. 447; Spengler v. Transit Co., 108 Mo. App. 329, 83 S. W. 312.] The serious question presented, however, is whether negligence can be predicated on defendant's failure to use timely and effectively the city's fire engines and equipment for this purpose. If not, then any error in refusing the amendment presenting such defense or in withdrawing such issue and the evidence supporting it from the jury or refusing instructions embodying such defense, though a wrong reason was assigned by the court for so doing, cannot work a reversal of the case.

The question of holding a city liable for negligence in not using its fire engines and apparatus promptly or effectively in cleaning out obstructed sewers to avert threatened injury to a property owner is a novel one so far as we are able to find with the assistance of able counsel on either side. It will be granted that a city, having constructed and put in operation a system of sewers, is required to keep same in a reasonably safe and effective condition and to use ordinary care

and diligence to keep same free of obstructions likely to cause damage. [Woods v. City of Kansas, 58 Mo. App. 272; Thurston v. City of St. Joseph, 51 Mo. 510, 519; 4 Dillon's Municipal Corporations, sec. 1742; 6 McQuillin Municipal Corporations, sec. 2695.] The plaintiffs insist that the city is required, in discharging its duty in this respect, to use any and all reasonable means at hand to accomplish the result and that this includes the use of the city's fire engines and apparatus. To this we cannot agree. Many arguments will suggest themselves why it is not reasonable to require the city to divert such apparatus from the highly important use for which it is maintained to an entirely different use. Such engines and appliances should be continuously kept in the highest state of efficiency and availability for instant use in case of fire. Does the city owe a higher duty in the use of such instrumentalities to one whose cellar is being flooded than to one whose house is burning? It is well-settled law that the maintenance and use of the fire department and equipment of a city belongs to its governmental functions and with reference to either the use or abuse of same by the city the doctrine of *respondeat superior* does not apply. The city cannot be held liable in damages for either a negligent use or failure to use its fire engines and equipment. It is not liable for acts of omission or commission, misfeasance or nonfeasance with reference thereto. [Heller v. Mayor of Sedalia, 53 Mo. 159; McKenna v. City of St. Louis, 6 Mo. App. 320; Frederick v. City of Columbus (Ohio), 51 N. E. 35; 4 Dillon Municipal Corporations, sec. 1660; 5 McQuillin Municipal Corporations, sec. 2432.] The numerout cases to the effect that the city is not liable for a negligent failure to use timely and effectively its fire engines and other such equipment, generally, if not always, have dealt with the doing of the acts for which such are maintained, to-wit; the prevention or extinguishment of fires. But it would be somewhat of an anomaly to hold the city not liable for a negligent failure to use such appliances in the accomplishment of those purposes for which same are kept and main-

tained and then hold that the city is liable for such failure to use same for purposes entirely foreign to their intended use. We therefore hold that the city cannot be held liable for negligence in this respect.

What we have said disposes of all the errors assigned by appellants, and results in affirming the judgment.

*Robertson, P. J.,* and *Farrington, J.,* concur.