## PARIS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1919.)

No. 5272.

1. CRIMINAL LAW ⬳371(1), 374—EVIDENCE OF SIMILAR OFFENSE TO PROVE INTENT MUST BE CONCLUSIVE.

While proof of the commission of like offenses by a defendant at about the same time that he is charged with commission of the offense for which he is on trial may be received to prove unlawful intent, such evidence of another distinct offense must be plain, clear, and conclusive, and evidence of a vague and uncertain character is never admissible.

2. CRIMINAL LAW ⬳374—EVIDENCE OF ARREST FOR PRIOR OFFENSE AND DISCHARGE INADMISSIBLE.

On trial of defendants, charged with unlawfully carrying on the business of dealers in narcotics, the admission of evidence that they were arrested for a similar offense in another district nine months before, where they were not indicted and were discharged, held error, under the rule that vague and uncertain evidence of other offenses is inadmissible.

3. POISONS ⬳9—EVIDENCE OF POSSESSION OF MORPHINE INSUFFICIENT TO PROVE UNLAWFUL DEALING.

Evidence that defendants, charged as unlawful dealers in narcotics, several months before in another district had a considerable quantity of morphine in their possession, held incompetent, where it was shown that they were habitual users of the drug.

4. CRIMINAL LAW ⬳1129(3)—ASSIGNMENT OF ERRORS CLEARLY DESIGNATING OBJECTION CONSIDERED.

An assignment of error in the admission of clearly prejudicial evidence in a criminal case will not be disregarded, where, while not technically complying with rule 11, by setting out the evidence, it accomplishes the object of the rule by clearly designating it and the ground of objection.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Criminal prosecution by the United States against L. W. Paris. Judgment of conviction, and defendant brings error. Reversed.

Giddings & Giddings and J. Q. A. Harrod, all of Oklahoma City, Okl., for plaintiff in error.

John A. Fain, U. S. Atty., of Lawton, Okl., and Frank E. Ransdell, Asst. U. S. Atty., of Oklahoma City, Okl.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. Separate indictments were found against the defendant below, L. W. Paris, and his wife, Mary Paris, for the same alleged violation of Harrison Anti-Narcotic Act Dec. 14, 1914, c. 1, 38 Stat. 785 (Comp. St. §§ 6287g–6287q). The charge against each of them was that in the county of Oklahoma, in the Western district of Oklahoma, he and she on January 12, 1918, carried on the business of a dealer in opium and cocoa leaves, and the derivatives, compounds, and preparations thereof, without first having paid the special tax therefor, and without registering with the collector of internal revenue for the district of Oklahoma. They were

tried together. There was evidence that each of the defendants was and had long been constantly addicted to the use of morphine in large quantities; that a policeman in December, 1917, took out of a handbag in their room in a hotel in Oklahoma City a bottle of morphine, and found two other small boxes of morphine and a hypodermic syringe in their bed; that in the month of January or the early part of February, 1918, another policeman saw the defendant Paris put some bottles of morphine and a hypodermic syringe on a 2x4 inside the fence near the sidewalk on which he stood in Oklahoma City; and that on the 15th day of February, 1918, Mrs. Paris sold a bottle of morphine to Daisey Allen at the latter's residence in Oklahoma City for $10, promised to bring her some more morphine, and two days later returned, when she was arrested. The defendant's witnesses admitted that the defendants were addicted to the use of morphine, but testified that they never sold any. There was other evidence in the case, but no direct evidence of any other sales by Mrs. Paris, and no direct evidence of any sale of any opium, cocoa leaves, or any derivatives, compounds, or preparations thereof, or of any other dealing therein than the purchase thereof for the personal use of himself and his wife, by the defendant Paris. The jury found the defendant Paris guilty, and his wife not guilty, and he was sentenced to imprisonment for a term of two years.

During the presentation of the evidence in chief for the government, the court below admitted, over the objections and exceptions of the defendant Paris that this evidence related to a situation and transaction without the Western district of Oklahoma, that it was incompetent, irrelevant, and immaterial, and had no bearing upon the issue in this case, testimony to this effect: At Tulsa, in the Eastern district of Oklahoma, about the 25th or 26th of March, 1917, Paris went to the railroad station, bought a ticket to Memphis, Tenn., checked his handbag, and came out of the station with his wife. Then and there a police officer arrested them, took them to the police station, took the check for his handbag from Paris, went to the station, seized and opened his handbag, and found therein 20 bottles of morphine; went to the hotel where Mr. and Mrs. Paris were boarding, and found in their rooms 6 bottles of morphine. At the trial of this case these bottles were exhibited to the jury. There was no evidence that either of the defendants ever sold any morphine at Tulsa, there was no evidence that the situation and transaction at Tulsa was connected in any way with that at Oklahoma City, there was uncontradicted evidence that Paris was taken before a commissioner and bound over at Tulsa, that he gave bail, that the Grand Jury did not indict him, that his bail was discharged, and that he was not further prosecuted on account of the Tulsa matter. At the close of the trial the court instructed the jury, relative to the evidence concerning the acts at Tulsa, that they should not consider that evidence unless they found that there was a scheme to carry on—

"this business there that was a part of, or included, Oklahoma City or county here, and the evidence of the transaction at Tulsa was simply an indication of what was going on in this district, or of a plan to carry it on in this district; but if it was just an isolated and independent matter, and had no relation with

any dealing of that character over here in Oklahoma City, then you will eliminate it entirely from your minds."

The admission of this evidence relative to the Tulsa affair is specified as error, and it is difficult to discover any rule or principle upon which its admission can be sustained.

[1] The general rule is that evidence of the admission by a defendant of an offense similar to that for the alleged commission of which he is on trial is not admissible to prove his commission of the latter offense. Boyd v. United States, 142 U. S. 454, 456, 457, 458, 12 Sup. Ct. 292, 35 L. Ed. 1077; Hall v. United States, 150 U. S. 76, 81, 82, 14 Sup. Ct. 22, 37 L. Ed. 1003; 16 C. J. 586, § 1132. To this general rule there are exceptions. One of them is that, where the criminal intent of the defendant is indispensable to the proof of the offense, proof· of his commission of other like offenses at about the same time that he is charged with the commission of the offense for which he is on trial may be received to prove that his act or acts were not innocent or mistaken, but constitute an intentional violation of the law. In cases falling under such an exception to the rule, however, it is essential to the admissibility of evidence of another distinct offense that the proof of the latter offense be plain, clear, and conclusive. Evidence of a vague and uncertain character regarding such an alleged offense is never admissible. Baxter v. State, 91 Ohio St. 167, 110 N. E. 456; State v. Hyde, 234 Mo. 200, 136 S. W. 316, Ann. Cas. 1912D, 191; 16 C. J. 592; People v. Sharp, 107 N. Y. 427, 469, 14 N. E. 319, 1 Am. St. Rep. 851; State v. La Page, 57 N. H. 245, 259, 24 Am. Rep. 69; Fish v. United States, 215 Fed. 545, 549, 132 C. C. A. 56, L. R. A. 1915A, 809. Such evidence tends to draw the attention of the jury away from a consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdicts in accordance with their views on false issues rather than on the true issues on trial. Speaking of evidence of other similar offenses, the Circuit Court of Appeals of the First Circuit, in the case last cited, well said:

"Evidence of this character necessitates the trial of matters collateral to the main issue, is exceedingly prejudicial, is subject to being misused, and should be received, if at all, only in a plain case."

[2] Under these rules the evidence relating to the situation and transactions of the defendant below and the police officers at Tulsa on the 24th and 25th of March, 1917, was clearly incompetent, irrelevant, and prejudicial: (1) Because it fails to prove any sale of or dealing in any narcotics at Tulsa by either of the defendants; (2) because no proof or evidence was produced at the trial that the situation or transactions at Tulsa in March, 1917, were in any way a part of or connected with the alleged sale of the bottle of morphine by Mrs. Paris to Daisey Allen in Oklahoma City on February 15, 1918; and (3) because the·intent of the defendants, or either of them, was not an essential element of the offense with which they were charged in the case at bar.

From this conclusion counsel for the United States seek to escape in numerous ways. They argue that the matters in the Tulsa evi-

dence were admissible under the decision of the Circuit Court of Appeals of the Fourth Circuit in Day v. United States, 229 Fed. 534, 143 C. C. A. 602. In that case Day was tried and convicted of carrying on the business of a wholesale liquor dealer in 1910 and 1911. In the trial the government proved four sales of liquor by the defendant without a license, and the payment therefor in the district, and within the jurisdiction of the trial court, in 1909. The Circuit Court of Appeals first held this evidence incompetent and irrelevant, and directed a reversal of the judgment. 220 Fed. 818, 819, 136 C. C. A. 406. On a motion for rehearing its attention was called to the rule in Ledbetter v. United States, 170 U. S. 610, 612, 18 Sup. Ct. 774, 42 L. Ed. 1162, that under an indictment charging a forbidden sale or sales upon a day certain evidence of sales within the jurisdiction of the court previous to the day specified in the indictment and within the time fixed by the statute of limitations is admissible to prove the offense charged, and because the four sales in 1909 were previous to the day specified in the indictment, and were within the time fixed by the statute of limitations, and the evidence of them was therefore competent as direct evidence of the substantive offense charged, the Court of Appeals held the evidence of them admissible. The decision and opinion in that case, however, is neither controlling nor persuasive upon the question of the admissibility of the evidence of the Tulsa transactions in this case: (1) Because the latter transactions were not within the jurisdiction of the court below and evidence of them was not direct evidence of the offense charged in this case; (2) because the evidence of these transactions was barren of any evidence of any sale at Tulsa and hence of any similar offense, while in Day's Case there was conclusive evidence of four sales in 1909; and (3) because the evidence of the transactions at Tulsa was vague and uncertain, while that in Day's Case was clear and conclusive.

[3] Counsel for the United States contend that the evidence of the possession of the 26 bottles of morphine at Tulsa in March, 1917, was competent to prove the intent of the defendants to carry on the business of a dealer in morphine at Oklahoma City on February 15, 1918, more than nine months after the transaction at Tulsa. The evidence relative to this contention is that these defendants were addicted to the use of morphine in large quantities, sometimes to the amount of a bottle a day; that they kept with them and used this morphine constantly; that they had never been in Oklahoma City in March, 1917, when they were at Tulsa; that at that time and place they had bought their tickets for Memphis, Tenn., checked their handbag containing 20 of the 26 bottles, and left it at the railroad station; and that they had the other 6 bottles in their room at the hotel. If, upon this evidence, a jury should find that these defendants had the intent to carry on the business of a dealer of morphine in Oklahoma City, or elsewhere, it would be the duty of the judge on the receipt of such a finding to set it aside, for there would be no substantial evidence here to sustain it. This evidence was not admissible as evidence of the evil intent of the defendants in the case at bar.

[4] Counsel argue that the sixth assignment of error, on which the

challenge of the evidence relative to the Tulsa transaction rests is insufficient, because it fails to set forth the substance of the evidence erroneously admitted, as required by rule 11 of this court (188 Fed. ix, 109 C. C. A. ix). But that assignment clearly states that the error to which it is directed is the admission over the objection and exception of the defendants of the testimony of a witness that the defendant was caught with the bottles of morphine in his possession at Tulsa, in the Eastern district of Oklahoma, a long time previous to his apprehension and arrest in the Western district. This assignment may not constitute a strict technical compliance with the literal terms of rule 11, but it accomplished the object of that rule; it gave fair notice to counsel and court of the claim of error which has been discussed, for the record contained evidence concerning only one transaction, and at only one time, when at Tulsa the defendant was caught with bottles of morphine. This is an important case to the defendant. It involves his imprisonment, his deprivation of liberty, for 2 years. The counsel for the United States have not been misled regarding, or ignorant of, the claim of error to which this assignment points, and this court is unwilling to disregard it on account of the harmless defect in the assignment.

Counsel also object to the consideration of this error in the trial, because no objection was made and no exception was saved to the greater part of the testimony concerning the transaction at Tulsa. But the record disclosed the fact that, by repeated and ample objections to all the proposed evidence on this subject before any of it was introduced, the defendants challenged its admission and excepted to the ruling of the court which admitted it. They objected to its consideration because the evidence on this subject to which counsel object was afterwards admitted without objection. But counsel for the defendants more than once objected to it, and contended against its admission, and never withdrew their objections. When the court decided that it should be admitted, they took their exception. Under the rules and practice in the federal courts, this was sufficient to entitle them to a review of the ruling. It was unnecessary for them thereafter to object to any evidence relating to the Tulsa transaction on the grounds stated in their overruled objections, whether that evidence was introduced once or many times.

This evidence of the transactions and situation at Tulsa was incompetent, irrelevant, and clearly prejudicial. It was not withdrawn from, but was submitted to, the jury in the charge of the court, although there was no evidence whatever connecting the Tulsa transactions with the transaction at Oklahoma City.

The judgment below must therefore be reversed, and the case must be remanded to the court below, with directions to grant a new trial; and it is so ordered.